IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )
                               )
v.                             )      No.  10-10089-02
                               )
MARLIN JACKSON BUTLER,         )
                               )
              Defendant.       )
_____)


**Memorandum and Order**

This matter came before the court on June 24, 2011, for a hearing on the defendant's

objections to the Presentence Report and for sentencing.  The court ruled orally on the objections

at the sentencing hearing.  This written memorandum will supplement the court's oral ruling.

*See* Fed.R.Crim.P. 32(i)(3)(B) & (C).

*Objections*.

1. <u>Value of the wildlife</u>.  USSG § 2Q2.1 contains an enhancement based on the market

value of the wildlife involved in the offense.  The Presentence Report determined that the

defendant's offense conduct and relevant conduct involved 35 deer, and that the market value of

these deer was $120,000.  This figure was based on the total amount of money hunters paid to

the defendants to hunt these deer.  Under §2Q2.1 (and the incorporated provisions of 2B1.1), an

offense involving anywhere between $70,000 and $120,000 gives rise to an 8-level enhancement

to the offense level.  The PSR thus applied an 8-level enhancement.

Defendant objects to the determination of value and argues that the total value figure

should be $10,000.  He argues that prior to July 1, 2007, Kansas law required restitution of $400

per unlawfully taken deer and after that date the figure was $1,000 per deer.  *Citing* K.S.A. § 32-1005.  Application of these amounts, he contends, would result in a total value of only $10,000.  Defendant contends the court is required to look to Kansas law for the determination of value, because the Lacy Act itself is based on an underlying violation of the state's law governing wildlife.  Defendant also points out that hunters who came to Camp Lone Star paid the defendants not only for hunting, but also for meals and lodging.

     As indicated previously, the court agrees with the reasoning of *United States v. Atkinson*, 966 F.2d 1260 (9th Cir. 1992), insofar as that case said the amount a hunter was willing to pay for a guided hunt may be considered as evidence of the wildlife's market value.  *Atkinson*, 966 F.2d at 1273.  *See also United States v. Todd*, 735 F.2d 146, 152 (5th Cir. 1984) (a commercial arrangement whereby a professional guide offers his services to obtain wildlife illegally is an offer to "sell" wildlife under the Lacey Act; "the best indication of the value of the game 'sold' in this manner is the price of the hunt.").  This is particularly true where, as here, there is no established retail value for the wildlife and the offense involves out-of-the-ordinary "trophy" animals.  The guidelines note that when a fair market retail price is difficult to ascertain, the court "may make a reasonable estimate using any reliable information," including "the reasonable replacement or restitution cost or the acquisition and preservation (e.g, taxidermy) cost."  USSG 2Q2.1, comment., n. 4.  The court concludes that the amount paid by hunters for these guided hunts represents the most reasonable estimate of the fair market value of the wildlife.  And even if a substantial reduction is made to reflect the value of meals or lodging provided by the defendants, the remaining amount is still well over the $70,000 value that would give rise to the same 8-level enhancement under the guidelines.   In sum, the court concludes that

the PSR correctly applied the 8-level enhancement.

       2. <u>Manager or Supervisor enhancement</u>.  Defendant also objects to the Report's

application of a 3-level enhancement under USSG 3B1.1(b) for being a manager or supervisor of

a criminal activity involving five or more persons.  Defendant says he did not supervise anyone,

arguing that the hunters who came to the camp paid him for guiding services, such that he was at

their service and did not supervise them.  This is enhancement is applicable if the defendant was

a manager or supervisor *and* the criminal activity involved five or more participants or was

otherwise extensive.  The witness statements cited by the Government show that the defendant

was in fact a manager or supervisor of the criminal activity; the defendant was clearly in charge

of the operation when his brother was not present.  The statements also show more likely than

not that the defendant supervised at least one individual – Rance Rhyne – as part of the criminal

activity.[1]  Finally, the Government's statements also show that five or more participants –

including hunters who repeatedly visited the camp – were involved in the illegal activity.

Alternatively, the illegal operation would be characterized as "otherwise extensive" even if for

some reason these hunters were not considered to be "participants."  *Cf*. USSG 3B1.1, comment.,

bckgd. (It is "likely that persons who exercise a supervisory or managerial role in the

commission of an offense tend to profit more from it and present a greater danger to the public

---

     [1] See e.g., Govt. Att. A, Interview of Rance Rhyne ("RHYNE said M. Butler paid him $250/week cash, for working at CLS.... * * * RHYNE said he generally understood when deer taken by hunters were illegal as they were taken down to the pond behind CLS for processing and photographs.  Occasionally RHYNE would be instructed to take a deer to the pond by J. BUTLER or M. BUTLER.  RHYNE said it was more common for the deer to have already been taken to the pond by J. BUTLER or M. BUTLER and RHYNE was instructed to go to the pond and skin the deer out.  RHYNE said he was occasionally also told to go recover a deer shot by a hunter that was left in the field."

and/or are more likely to recidivate.  The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility.").  In sum, the court finds that the enhancement for being a supervisor or manager is appropriate.

3.  Incorporated Objections.  Defendant has moved to adopt and incorporate the sentencing memorandum filed by his brother, James Butler.  Doc. 101.  The Government does not object.  Defendant's motion is therefore granted.  To the extent the foregoing memorandum raises any additional objections that are applicable to defendant Marlin Butler, the court denies the objections for the same reasons previously stated in its ruling pertaining to James Butler.

*Section 3553(a)*.

Defendant Marlin Butler argues that a sentence of probation is warranted in his case.  The Government, pursuant to the plea agreement, recommends a sentence of 27 months imprisonment.

The sentencing court must first calculate the Guideline range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors in section 3553(a), explaining any variance from the Guideline range by referencing the statutory factors.  *Nelson v. United States*, 129 S.Ct. 890 (2009).  Section 3553(a) essentially provides that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the following purposes: -the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;  (B) to afford adequate deterrence to criminal conduct;  (C) to protect the public from further crimes of the defendant; and  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  In so doing, the court

4

must consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant;  (2) the purposes of sentencing set forth above;  (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense under the applicable sentencing guidelines; (5) policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and  (7) the need to provide restitution to any victims of the offense.

The court has considered these factors as they pertain to Marlin Butler's case.  The court concludes that a sentence of 27 months' imprisonment, at the low end of the advisory guideline range, is sufficient but not greater than necessary to meet the purposes of sentencing.   As the court stated at sentencing, this offense took place over a number of years and the defendant was an instrumental part of it.  It involved unlawful hunting on a wide scale, and the defendant actively encouraged others to engage in such acts and he profited from it.  Additionally, the court notes that he has several prior convictions and previously had a sentence of probation revoked for failing to abide by the terms of probation.  Under the circumstances, the sentence of 27 months is necessary to provide just punishment, to provide adequate deterrence, and to protect the public from further crimes of the defendant.  In addition to the term of imprisonment, the court concludes that a 3-year term of Supervised Release should be imposed, with a special condition that the defendant not engage in any hunting, fishing, or trapping of any wildlife, or accompany anyone or provide guiding services to anyone engaged in such activities.  A total fine of $10,000 is also appropriate, as is restitution in the amount of $10,000 to the Kansas Department of Wildlife and Parks, given the substantial impact of the offense on the department

and the state's resources.  A $200 special assessment is also required by law.

*Conclusion*.

Defendant's objections to the Presentence Report are DENIED.  The court concludes that a sentence of 27 months' imprisonment, together with the other terms and conditions stated at the sentencing hearing, is an appropriate sentence under 18 U.S.C. § 3553(a).

The Probation Officer in charge of this case shall see that a copy of this order is appended to any copy of the Presentence Report made available to the Bureau of Prisons.   IT IS SO ORDERED this   27th    Day of June, 2011, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
Senior U.S. District Judge